# United States District Court
# Northern District of Indiana
# Hammond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 2:09-CR-230 JVB |
| | ) | |
| WILLIAM CRAIG, III. | ) | |

**OPINION AND ORDER**

On December 2, 2009, Defendant William Craig, III, was indicted and charged with being a felon in possession of a firearm. On February 16, 2010, he moved to suppress the evidence against him seized pursuant to a search warrant executed on the morning of November 27, 2009, at the home he shared with his mother, Josie Craig, claiming that the warrant was not supported by probable cause (DE 21). He also seeks to exclude statements of Josie Craig made during the search and at the Merrillville Police Department and any evidence seized during a second search in the afternoon of November 27 pursuant to Josie Craig's consent. Additionally, he moved for a *Franks* hearing (DE 22). On March 15, 2010, he filed a supplement to the motions. For the reasons set forth below, the Court denies both motions.

**A. Facts**

On November 25, 2009, P. M. was shot in the Merrillville, Indiana, Meijer store parking lot. Merrillville police officers obtained a warrant to search Defendant's house and a silver 2004 Toyota 4Runner on the basis of the following affidavit from Merrillville Police Detective James Lilley:

On 11/25/2009 at 8:25 am, I was dispatched to Meijer's located at 611 W.

Lincoln Hwy, Merrillville, for a shooting that had just occurred in the parking lot. Upon arrival I learned that the victim, [P.M.], suffered a single gunshot wound to her back while walking southbound in the parking [sic] in the direction of the west entrance doors. During the course of investigation, I was given access to the security office at Meijer's and observed a video that covered the area of where the shooting occurred. I observed the victim driving southbound in the Meijer's parking lot being followed by a silver or gray Toyota 4Runner. [The victim] then parked her vehicle as the suspect's vehicle proceeded further down the same aisle and parked. [The victim] then exited her vehicle and proceeded in the direction of the store and was followed by a subject from the silver or gray Toyota 4Runner. The subject appeared to be wearing all dark clothing and a hooded jacket with the hood covering his head. The subject approached [the victim] from behind in a fast manner and raised his arm in the direction of [the victim]. [The victim] was then shot and immediately hit the ground as the subject changed direction and returned to his vehicle. The subject then entered his vehicle (silver or gray Toyota 4Runner) and exited the parking lot onto US 30 in an unknown direction. It was later determined in my investigation that [the victim] was currently employed by Walmart and works at the Schererville location. Detective Lance Huish proceeded to the Walmart in Schererville and observed video from their surveillance cameras that showed the suspect's vehicle (silver or gray Toyota 4Runner) enter the Walmart parking lot just prior to [the victim] exiting the business. The suspect's vehicle then parked in close proximity of [the victim's] car and nobody was observed entering or exiting. [The victim] was seen walking to her car and pulling off out of view of the surveillance cameras with the suspect's car following. Detective Huish was later contacted on 11/26/09, by Theodore Johnson who is the store manager of the Walmart in Schererville. Johnson stated that he spent a considerable amount of time reviewing their security footage and strongly believed the suspect vehicle belonged to employee William Craig III. Johnson further advised that [the victim] had recently handled disciplinary problems involving Craig. On 11/27/09 at 4 am, I met with Craig at Walmart while he was working his scheduled midnight shift and requested that he come to the Merrillville Police Department for an interview. Craig agreed and was transported to the police department by a uniformed officer. Craig's vehicle (silver 2004 Toyota 4Runner) was located in the parking lot and brought to the Merrillville Police Department for further investigation. I also had the occasion to speak with Craig's girlfriend, Clara Horsley, who stated that she believed Craig was involved in the shooting and agreed to come to the police department for a formal statement. During the interview with Horsley she stated that Craig has often bragged about having guns and recalled Craig saying that [the victim] often picks on employees and often writes them up for violations. Horsley stated that Craig told her that someday someone would kill [the victim]. On 11/25/09, still images of the suspect's vehicle were retrieved from the Walmart surveillance video and submitted to HIDTA (High Intensity Drug Task Force) for enhancement. HIDTA personnel were unable to retrieve a legible plate number

from the suspect's vehicle but could determine it was an Indiana handicap plate. Craig's vehicle also displays an Indiana handicap plate.

On November 27, 2009, The police searched Defendant's house and a 2004 Toyota 4Runner, and seized guns and ammunition pursuant to the warrant. According to Defendant, Josie Craig was present during the search and made statements to law enforcement authorities then as well as during a meeting with federal agents at the Merrillville Police Department and during the search of her home that was conducted pursuant to her consent on the afternoon of November 27.

**B. Arguments**

Defendant argues that he is entitled to a *Franks* hearing because the Meijer store surveillance video shows that the following statements in the affidavit are false:

1. "I observed the victim driving southbound in the Meijer's parking lot being followed by a silver or gray Toyota 4Runner."

2. "[The victim] then parked her vehicle as the suspect's vehicle proceeded further down the same aisle and parked."

3. "[The victim] then exited her vehicle and proceeded in the direction of the store and was being followed by a subject from the silver or gray Toyota 4Runner."

4. The repeated use of the word "his" when referring to the subject.

5. "The subject then entered his vehicle . . . and exited the parking lot onto US 30 in an unknown direction."

According to Defendant, a careful review of the video (DE 22, Ex. B) shows that it is impossible to identify a Toyota 4Runner following the victim's car, to identify a Toyota 4Runner

following the victim walking[1], to identify any male exiting a Toyota 4Runner and following the victim, or to see a Toyota 4Runner leaving the parking lot. He claims that these five false statements could only have been made knowingly and intentionally or with reckless disregard for the truth. He asserts that these five falsehoods constitute a substantial preliminary showing that the affidavit for the search warrant contains knowing and intentional or reckless misrepresentations, entitling him to a *Franks* hearing.

Defendant also contends that the search warrant issued on the basis of Detective Lilley's affidavit is not supported by probable cause, because the security videos at Walmart and Meijer do not link him to the suspect vehicle seen in the videos. He claims that the only evidence linking Defendant to the crime is the generalized statement of an ex-girlfriend, which he asserts is unreliable.

In the supplement to the motions, he argues that there is no evidentiary support for the contention that HIDTA personnel could determine that the suspect vehicle had an Indiana handicap license plate. He attaches what he believes is the only evidence supporting the determination that the vehicle had a handicap plate—a still photo of what appears to be the back of a vehicle with an illegible license plate (DE 28, Ex. A).

The Government contends that the video supports the statements in the affidavit, that Defendant has failed to show that the statement that HIDTA could determine that the plate on the suspect vehicle was a handicap plate was false, and that Defendant has not made the requisite showing to merit a *Franks* hearing or to show that the search warrant was not supported by

---

[1] Defendant is correct that the Meijer surveillance tape does not show a Toyota 4Runner following the victim walking. However, the warrant affidavit does not make such a claim. The affidavit states that a person *from* the 4Runner followed the victim in the parking lot.

4

probable cause.

**C.      Legal Standards**

(1)      *Franks Hearing*

The Court's review of a challenge to the validity of a search warrant is limited to the information contained in the search warrant affidavit. *See Hackney, Inc. v. McLaughlin*, 895 F.2d 1298, 1300 (10th Cir. 1990) ("The 'four corners doctrine' limits challenges to the validity of search warrants to review of the materials submitted to the magistrate."). Nevertheless, when the veracity of the affidavit is challenged, a defendant may be entitled to an evidentiary hearing if he meets certain requirements outlined in *Franks v. Delaware*, 438 U.S. 154 (1978):

> To mandate an evidentiary hearing . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Id*. at 171–72. A defendant may offer evidence showing either that the warrant affiant lied or that he recklessly disregarded the truth because he in fact entertained serious doubts as to the truth of his allegations or had obvious reasons to doubt the veracity of the allegations. *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000) (citations and internal quotation marks omitted).

In addition to the substantial showing that a statement is false, a defendant must show that the allegedly false statement is necessary to the finding of probable cause. *Franks* at 155–56. A search warrant affidavit is presumed to be valid. *See id*. at 171.

5

(2)  *Search Warrant Affidavit*

Under the Fourth Amendment, a warrant is valid if it is based "upon probable cause, supported by Oath or affirmation, and particularly describ[es] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A defendant, therefore, may challenge a warrant for lack of probable cause. However, given the great deference that is afforded a judge's determination of probable cause, the challenge is limited:

> [a] magistrate's determination of probable cause is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated. . . . [D]oubtful cases should be resolved in favor of upholding the warrant.

*United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000) (citations omitted). Probable cause is a probability of or a substantial chance of criminal activity, not an actual showing of criminal activity. *Illinois v. Gates*, 462 U.S. 213, 244 (1983).

**D.  Discussion**

Defendant has not met his burden of showing that he is entitled to a *Franks* hearing. He has provided no sworn or otherwise reliable statements of witnesses that Detective Lilley lied or recklessly disregarded the truth. His chief evidence, the surveillance tape from the Meijer store, shows what the affidavit says it shows with one insignificant exception. The affidavit states that the surveillance tape shows the suspect vehicle exiting the parking lot onto US 30 in an unknown direction. In fact the tape shows only that the vehicle is headed in a northeasterly direction toward US 30. It would be logical to infer that the vehicle did exit the parking lot onto US 30,

but in the last view of the vehicle on the tape, it is still in the parking lot and US 30 is not visible. However, whether the vehicle in fact turned onto US 30 or was merely headed in that direction has no bearing whatsoever on the existence of probable cause to search Defendant's home and vehicle.

Defendant also challenges the use of the word "his" to refer to the suspect, but the Court notes that the warrant affidavit never refers to the suspect as a male. In all probability Detective Lilley used the masculine pronoun in the generic sense, to refer to someone whose gender is unknown. Moreover, even if Detective Lilley thought the suspect was male, Defendant offers no evidence that he is incorrect or that the conclusion was a deliberate lie or a reckless disregard of the truth: the suspect in the video is neither obviously male nor obviously female.

With regard to the identity of the silver or gray vehicle seen following behind the victim's car, the Government has shown that it can be identified as a Toyota 4Runner by comparing a still taken from the second Meijer video at 8:16.453 with photos of a known Toyota 4Runner.

As for the Defendant's claim that it is impossible to identify the license plate in the picture attached to his supplement as a handicap plate, the Court agrees that it cannot so identify the plate from the that picture. Nonetheless, this does not lead to the conclusion that Detective Lilley lied on the affidavit or recklessly disregarded the truth. According to the affidavit, HIDTA personnel made the determination. Defendant offers no evidence that the picture or the picture alone was what HIDTA relied on in making its determination or that Lilley's reliance on HIDTA's determination was not in good faith.

Moreover, the assertion that the suspect vehicle in the Walmart parking lot bore a

handicap plate is not crucial to finding probable cause to search Defendant's home. Lilley also knew that Defendant drove a Toyota 4Runner, and he had the statement of the Walmart manager about the victim's recent disciplinary problems involving Defendant and his belief that the car following the victim's in the Walmart parking lot belonged to Defendant, as well as Clara Horsley's statements. Defendant offers no evidence to suggest that these statements are unreliable or that Lilley had any reason to believe they were unreliable. The fact that a third party lied to an affiant, who included the lies in a warrant affidavit, does not constitute a *Franks* violation. A *Franks* violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth. *United States v. Jones*, 208 F.3d at 607 (citations omitted).

The Court also finds, under the totality of the circumstances, that the warrant affidavit establishes probable cause to support the warrant to search Defendant's home and vehicle. According to the warrant affidavit, Defendant was known to drive a Toyota 4Runner. He was known to have had a recent disciplinary issue with the victim. He had bragged about owning guns and was heard to have made what could be construed as a veiled threat against the victim. A vehicle similar to his was seen following the victim's car in the Walmart parking lot as she left work, and again in the Meijer parking lot, when a person emerged from the vehicle and shot the victim. The Court finds that the search warrant affidavit set forth facts sufficient to induce a reasonably prudent person to believe that the search would uncover evidence of a crime.

Alternatively, even if the warrant affidavit does not support probable cause, the Court will not suppress the evidence because the search and seizure fall withing the scope of the good-faith exception to the exclusionary rule as articulated in *United States v. Leon*, 468 U.S. 897

8

(1984).  In *Leon*, the Supreme Court established an exception to the Fourth Amendment exclusionary rule in cases where law enforcement officers have acted in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate. *Id.* at 927.   Even when it is debatable whether an affidavit contains sufficient facts to establish probable cause, the evidence will not be excluded unless it is so devoid of facts that a reasonable officer could not have believed that probable cause existed.  *See United States v. Stevens*, 380 F.3d 1021, 1025. The Court finds that Detective Lilley's belief that probable cause existed was objectively reasonable.

**E.  Conclusion**

For the foregoing reasons, Defendant's motion to suppress evidence (DE 21) and motion for a *Franks* hearing are DENIED.

SO ORDERED on April 7, 2010.

s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge